***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner, the briefs and argument before the Full Commission and the deposition testimony of Dr. George Huffmon and Dr. Charles Haworth received into evidence following oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
4. Key Risk Insurance Company was the carrier for defendant-employer's workers' compensation insurance and on the risk at the time of the injury.
5. Plaintiff's average weekly wage at the time of the injury was $400.00 per week, which results in a compensation rate of $266.68 per week.
6. The issues for determination include the following:
 a. Whether plaintiff suffered an injury by accident in the scope of her employment with defendant-employer on October 13, 2003?
 b. To what, if any, benefits is plaintiff entitled?
 c. Whether defendants have waived their right to contest the compensability of plaintiff's claim pursuant to N.C. Gen. Stat. § 97-18(d)?
 d. Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 and Rule 802?
 *********** *Page 3 EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit # 1: Industrial Commission Forms and discovery responses;
 b. Stipulated Exhibit # 2: Additional discovery responses; and
 c. Stipulated Exhibit # 3: Medical records.
2. In addition to Stipulated Exhibits, subsequent to the hearing before the Deputy Commissioner, additional medical records were provided by plaintiff, which were incorporated into the record as an addition to Stipulated Exhibit # 3.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 53 years old. Plaintiff has completed high school and a truck-driving course of instruction.
2. Plaintiff began her employment as a dump truck driver with defendant-employer on March 1, 2003. Mr. Sammie Smith and his son, Mr. Donald Smith, are co-owners of defendant-employer's business. Plaintiff's job duties consisted of driving a dump truck to various locations, hauling materials from the locations and lowering and raising the bed of the truck using a lever adjacent to the driver's seat. Plaintiff picked up the vehicle from defendant-employer's site and drove the vehicle to the work site.
3. At the hearing before the Deputy Commissioner, plaintiff testified that on October 13, 2003, plaintiff was driving her truck and hit "something" in the road causing her to bounce in *Page 4 
her seat and strike her head against the roof of the cab. Plaintiff stopped the truck for a few minutes and experienced a headache and soreness in her neck. At the end of the day, plaintiff reported the incident to Mr. Sammie Smith. No report was completed regarding the incident and Mr. Smith testified that plaintiff never told him of the incident.
4. Plaintiff testified that Mr. Donald Smith informed her that he had no workers' compensation insurance; therefore, she did not ask to complete an accident report. Mr. Smith testified that he had obtained workers' compensation insurance as a requirement for the job on which plaintiff was working at the time of her injury, and that he never told any employees that he did not have workers' compensation insurance.
5. The Full Commission finds plaintiff's testimony to be credible and gives greater weight to her testimony than that of Mr. Donald Smith.
6. On October 18, 2003, plaintiff voluntarily resigned her position with defendant-employer because she could not use her right arm due to pain and as such was no longer able to operate the dump truck.
7. Plaintiff testified that she did not immediately present for medical attention, as she believed she would have to pay for the treatment herself due to defendant-employer's lack of insurance. When the pain in her right arm and shoulder continued, plaintiff attempted to schedule an appointment with Dr. Gregory Schimizzi, a rheumatologist, who had treated her in the past for unrelated conditions. Since Dr. Schimizzi was unavailable, plaintiff presented to Dr. David Esposito, an orthopedic surgeon.
8. Although plaintiff had not returned to work after October 18, 2003 because, as she testified, she was unable to perform her duties, on October 21, 2003, Dr. Esposito released plaintiff to return to work on October 30, 2003 and indicated that plaintiff would continue *Page 5 
treatment with her rheumatologist, Dr. Schimizzi. On October 22, 2003, plaintiff presented to Jason Fedak, Dr. Esposito's physician's assistant, with complaints of headaches and right shoulder and neck pain. Plaintiff received an injection in her right shoulder.
9. On October 29, 2003, plaintiff presented to Dr. Schimizzi with complaints of increasing pain in her right shoulder over several weeks. Dr. Schimizzi's examination revealed a right acromioclavicular joint inflammation and pain. He opined that plaintiff could not work and gave her an injection, prescribed medication, and ordered an MRI of her cervical spine.
10. Plaintiff returned to Dr. Schimizzi on November 17, 2003, to review the results of the MRI. At this time, plaintiff gave a history of the October 13, 2003 trucking incident to Dr. Schimizzi's assistant, Wendy Simmons. Dr. Schimizzi reviewed the MRI and opined that it showed "multi-level right paracentral disk and osteophyte complexes with mild to moderate cord compression, and right-sided foramenal stenosis that was greatest at C5-6 where the right neuroforamen was completely occluded." Dr. Schimizzi recommended that plaintiff seek treatment from neurosurgeon, Dr. George Huffmon.
11. On December 2, 2003, plaintiff presented to Dr. Huffmon with complaints of neck problems. Plaintiff provided a history consistent with the October 13, 2003 incident. Plaintiff noted that since the date of the incident, she was experiencing pain in her neck traveling to her right shoulder and right arm. She also had numbness and tingling into the right hand and pain in her low back and left leg and foot. Dr. Huffmon noted a large herniated disk, a bone spur at C5-6 with squeezing on the canal at C4-5 and C6-7. Given what he characterized as "the severity of the injury," he focused his treatment on plaintiff's neck.
12. Although Dr. Huffmon opined that plaintiff's condition warranted surgical intervention, due to the risks of surgery he decided to begin with conservative treatment. Dr. *Page 6 
Huffmon also opined that due to plaintiff's condition she was unable to drive on bumpy roads and should avoid lifting greater than 10 to 15 pounds, pushing or pulling more than 20 pounds, driving long distances and operating heavy machinery. Dr. Huffmon recommended a myelogram of plaintiff's cervical spine.
13. Plaintiff returned to Dr. Huffmon on February 13, 2004, with continuing complaints of pain in her right arm and low back and numbness and tingling in her right fingers. The myelogram showed stenosis at C3-4, 4-5, 5-6 and 6-7 with foraminal stenosis at 3-4, bone spurs at C4-5 and C6-7, and a herniated disk. Plaintiff received nerve root blocks, which provided some relief; however, Dr. Huffmon ultimately recommended surgery.
14. Dr. Huffmon opined to a reasonable degree of medical certainty that the incident on October 13, 2003, in which plaintiff struck her head on the interior of the truck roof caused a pre-existing condition to become symptomatic and may have actually caused the rupture of the disk at C5-6. Dr. Huffmon further opined that plaintiff was totally restricted from returning to work until she received the recommended surgery.
15. Plaintiff continued to treat with Dr. Schimizzi through April 12, 2005. At that time, Dr. Schimizzi opined that plaintiff's description of the events of October 13, 2003, followed by the nature of her subsequent physical complaints was sufficient to support an opinion to a reasonable degree of medical certainty that the October 13, 2003 incident caused the aggravation of plaintiff's pre-existing condition.
16. Following oral argument before the Full Commission, the parties deposed Dr. Charles Haworth, a board-certified neurosurgeon, who had seen plaintiff on one occasion prior to her accident on October 13, 2003. Plaintiff presented to Dr. Haworth on April 16, 1999 with complaints of headaches, neck pain, numbness in her right hand, shooting pain down her right *Page 7 
dorsal forearm and numbness and tingling in her hands. Dr. Haworth noted that plaintiff had some right-sided neck pain when she rotated her neck side-to-side, with some increased neck pain with flexion as well as some weakness in the right biceps and an absent biceps reflex, bilaterally.
17. After reviewing diagnostic reports, Dr. Haworth opined that plaintiff's degenerative changes have been getting progressively worse over time. However, when questioned as to whether the incident of striking her head on October 13, 2003 caused plaintiff's pre-existing condition to become symptomatic and possibly caused a rupture of the C5-6 disk, he deferred to Dr. Huffmon's opinion as plaintiff's treating physician.
18. After the hearing before the Full Commission, the parties deposed Dr. Huffmon a second time. Dr. Huffmon reviewed Dr. Haworth's records and noted that plaintiff had similar symptoms at least four years prior to seeing him and that she was most likely going to need surgery at some point. He opined that the October 13, 2003 accident caused plaintiff's symptoms but he did not know to what extent. Dr. Huffmon further opined to a reasonable degree of medical certainty that the incident on October 13, 2003 caused plaintiff to need fusion surgery.
19. The greater weight of the medical evidence reveals that as a result of plaintiff's accident on October 13, 2003, she suffered an aggravation of a pre-existing condition, which became increasingly symptomatic, causing her to need surgery and be disabled from work beginning October 18, 2003 and continuing.
20. Although Dr. Schimizzi testified that he did not record any details of plaintiff's work-related incident on October 13, 2003, it did not mean that she did not tell him. He did testify, however, that he recalled plaintiff telling him the seat on which she was sitting at the time *Page 8 
of her injury had a defective shock absorber. Dr. Schimizzi further testified that he had no reason to doubt plaintiff's voracity.
21. At the hearing before the Deputy Commissioner, plaintiff testified that she has never filed a workers' compensation claim and was unaware that she needed to complete a form to report her injury. She further testified that she did not immediately report to Dr. Schimizzi that her injury was work-related because she thought that she "just pulled something in her arm" and that her discomfort was due to a worsening of her arthritis. It was not until later when she learned that her condition was not due to a deterioration of her arthritis that she attributed her condition to her accident on October 13, 2003.
22. The Full Commission finds plaintiff's testimony to be credible.
23. The Full Commission further finds that plaintiff's failure to provide defendant-employer with timely written notice of her work-related injury was reasonable based on her belief that defendant-employer did not have workers' compensation coverage. Moreover, defendants have failed to show any prejudice from not receiving timely notice of plaintiff's work-related injury.
24. Defendants have defended this matter with reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff on October 13, 2003, plaintiff sustained an injury by accident to her cervical spine arising out of and in the course of her *Page 9 
employment with defendant-employer when the truck she was driving hit something in the road causing her to strike her head against the roof of the cab. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff is entitled to temporary total disability compensation at the rate of $266.68 per week beginning on October 18, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of her compensable injury by accident, plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including the surgery recommended by Dr. Huffmon. N.C. Gen. Stat. §§97-2(19), 97-25.
4. Defendants shall pay the costs.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $266.68 per week beginning on October 18, 2003 and continuing until further Order of the Commission. Compensation that has accrued shall be paid to plaintiff in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from the lump sum due plaintiff and paid directly to counsel. Thereafter, every fourth payment shall be paid directly to plaintiff's counsel. *Page 10 
3. Defendants shall pay medical expenses incurred or to be incurred as a result of plaintiff's compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including the surgery recommended by Dr. Huffmon.
4. Defendants shall pay the costs.
This the ___ day of July 2007.
S/___________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER